| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Shirley S. Cho (CA Bar No. 192616)<br>Jeffrey P. Nolan (CA Bar No. 158923)<br>Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Telephone:  310/277-6910<br>Facsimile:  310/201-0760<br>Email:  scho@pszjlaw.com<br>         jnolan@pszjlaw.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorneys for:*  Rocket Ball, Ltd. d/b/a The Houston Rockets, and Clutch City Sports & Entertainment, L.P. | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -  LOS ANGELES DIVISION**

| In re:<br><br>Able Events Inc fka ROKit Marketing Inc.,<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 22-bk-11344-SK<br><br>CHAPTER: 7<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br><br>**(ACTION IN NONBANKRUPTCY FORUM)**<br><br>DATE: May 11, 2022<br>TIME:  8:30 a.m.<br>COURTROOM: 1575 |

**Movants**: Rocket Ball, Ltd. d/b/a The Houston Rockets, and Clutch City Sports & Entertainment, L.P.

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012      ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys *(if any),* and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  April 20, 2022

Pachulski Stang Ziehl & Jones LLP
Printed name of law firm (if applicable)

Shirley S. Cho
Printed name of individual Movant or attorney for Movant

*/s/ Shirley S. Cho*
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*
DOCS_LA:343273.2 75207/001                          Page 2                          **F 4001-1.RFS.NONBK.MOTION**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO NONBANKRUPTCY ACTION

1. **In the Nonbankruptcy Action, Movants are:**

   a. ☒ Plaintiffs

   b. ☐ Defendant

   c. ☒ Other (*specify*): Judgment Creditors

2. **The Nonbankruptcy Action:** There is a pending lawsuit or administrative proceeding (Nonbankruptcy Action) involving the Debtor or the Debtor's bankruptcy estate:

   a. *Name of Nonbankruptcy Action*: Rocket Ball, Ltd d/b/a the Houston Rockets, and Clutch City Sports & Entertainment, L.P. vs. ROKit Marketing Inc.

   b. *Docket number*: 202066997

   c. *Nonbankruptcy forum where Nonbankruptcy Action is pending:* District Court, Harris County, Texas

   d. Causes of action or claims for relief (Claims): Order and Final Judgment entered on October 19, 2020 (the "Judgment")

3. **Bankruptcy Case History:**

   a. ☒ A voluntary   ☐ An involuntary   petition under chapter   ☒ 7  ☐ 11  ☐ 12  ☐ 13
      was filed on (*date*) _March 7, 2022_____.

   b. ☐ An order to convert this case to chapter   ☐ 7  ☐ 11  ☐ 12  ☐ 13
      was entered on (*date*) _____.

   c. ☐ A plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**  Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Nonbankruptcy Action to final judgment in the nonbankruptcy forum for the following reasons:

   a. ☐ Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.

   b. ☒ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   c. ☐ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   d. ☐ The Claims are nondischargeable in nature and can be most expeditiously resolved in the nonbankruptcy forum.

   e. ☐ The Claims arise under nonbankruptcy law and can be most expeditiously resolved in the nonbankruptcy forum.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 3                      **F 4001-1.RFS.NONBK.MOTION**
DOCS_LA:343273.2 75207/001

f. ☐ The bankruptcy case was filed in bad faith.

   (1) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (2) ☐ The timing of the filing of the bankruptcy petition indicates that it was intended to delay or interfere with the Nonbankruptcy Action.

   (3) ☐ Multiple bankruptcy cases affect the Nonbankruptcy Action.

   (4) ☐ The Debtor filed only a few case commencement documents. No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

g. ☒ Other (*specify*): Movants seek to domesticate the Judgment and amend the Judgment to name non-debtor affiliates.  Movants agree that prior to enforcement of the Judgment, they will provide not less than 14 days' notice to the Trustee and if the Trustee objects, they will not proceed without prior agreement or further Court Order.

5. **Grounds for Annulment of Stay.** Movant took postpetition actions against the Debtor.

a. ☐ The actions were taken before Movant knew that the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed in the Nonbankruptcy Action in prior bankruptcy cases affecting the Nonbankruptcy Action as set forth in Exhibit. _____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion: (*Important Note: declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.*)**

a. ☒ The DECLARATION RE ACTION IN NONBANKRUPTCY FORUM on page 6.

b. ☐ Supplemental declaration.

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the Debtor's case commencement documents are attached as Exhibit. _____.

d. ☒ Other evidence (*specify*): Judgment attached as **Exhibit 1** hereto.

7. ☒ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**Movant requests the following relief:**

1. Relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

2. ☐ Movant may proceed under applicable nonbankruptcy law to enforce its remedies to proceed to final judgment in the nonbankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against the Debtor or property of the Debtor's bankruptcy estate.

3. ☐ The stay is annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant in the Nonbankruptcy Action shall not constitute a violation of the stay.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*
DOCS_LA:343273.2 75207/001

Page 4

**F 4001-1.RFS.NONBK.MOTION**

4. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified, or annulled as to the co-debtor, on the same terms and condition as to the Debtor.

5. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

6. ☒ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Nonbankruptcy Action.

7. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without further notice

8. ☒ Other relief requested.  To the extent the stay applies, the stay is lifed to allow Movants to amend the Judgment to name non-debtor affiliates in order to pursue recovery of the Judgment from non-debtor affiliates only. Movants agree that prior to enforcement of the Judgment, they will provide not less than 14 days' notice to the Trustee and if the Trustee objects, they will not proceed without prior agreement or further Court Order.

Date: April 20, 2022 

Pachulski Stang Ziehl & Jones LLP
Printed name of law firm (*if applicable*)

Shirley S. Cho
Printed name of individual Movant or attorney for Movant

*/s/ Shirley S. Cho*
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                        Page 5                            **F 4001-1.RFS.NONBK.MOTION**
DOCS_LA:343273.2 75207/001

## DECLARATION RE ACTION IN NONBANKRUPTCY FORUM

I, (*name of Declarant*)  Shirley S. Cho _____, declare as follows:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding (Nonbankruptcy Action) because:

    ☐  I am the Movant.
    ☐  I am Movants' attorney of record in the Nonbankruptcy Action.
    ☐  I am employed by Movant as (*title and capacity*):
    ☒  Other (*specify*):  I am the Movant's California co-counsel.

2.  I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Nonbankruptcy Action. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

3.  In the Nonbankruptcy Action, Movants are:

    ☒  Plaintiffs
    ☐  Defendant
    ☒  Other (*specify*): Judgment Creditors

4.  The Nonbankruptcy Action is pending as:

    a.  *Name of Nonbankruptcy Action:* Rocket Ball, Ltd d/b/a the Houston Rockets, and Clutch City Sports & Entertainment, L.P. vs. ROKit Marketing Inc.
    b.  *Docket number:* 202066997
    c.  *Nonbankruptcy court or agency where Nonbankruptcy Action is pending:* District Court, Harris County, Texas

5.  Procedural Status of Nonbankruptcy Action:

    a.  The Claims are: Judgment entered.  A true and correct copy of the entered Judgment is attached hereto as **Exhibit 1**.

    b.  True and correct copies of the documents filed in the Nonbankruptcy Action are attached as **Exhibit 1**.

    c.  The Nonbankruptcy Action was filed on (*date*) May 2020____.

    d.  Trial or hearing began/is scheduled to begin on (*date*) _____.

    e.  The trial or hearing is estimated to require _____ days (*specify*).

    f.  Other plaintiffs in the Nonbankruptcy Action are (*specify*):

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 6                          **F 4001-1.RFS.NONBK.MOTION**
DOCS_LA:343273.2 75207/001

g.  Other defendants in the Nonbankruptcy Action are (*specify*):


5.  **Grounds for relief from stay:**

a.  ☒  Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

b.  ☐  Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

c.  ☐  Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate. The insurance carrier and policy number are (*specify*):


d.  ☐  The Nonbankruptcy Action can be tried more expeditiously in the nonbankruptcy forum.

    (1)  ☐  It is currently set for trial on (*date*) _____.

    (2)  ☐  It is in advanced stages of discovery and Movant believes that it will be set for trial by (*date*) _____. The basis for this belief is (*specify*):


    (3)  ☐  The Nonbankruptcy Action involves non-debtor parties and a single trial in the nonbankruptcy forum is the most efficient use of judicial resources.

e.  ☐  The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Nonbankruptcy Action.

    (1)  ☐  Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

    (2)  ☐  The timing of the filing of the bankruptcy petition indicates it was intended to delay or interfere with the Nonbankruptcy Action based upon the following facts (*specify*):


    (3)  ☐  Multiple bankruptcy cases affecting the Property include:

      (A) Case name:
          Case number:                Chapter:
          Date filed:           Date discharged:        Date dismissed:
          Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not granted.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(B) Case name:

    Case number:                    Chapter:

    Date filed:             Date discharged:          Date dismissed:

    Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not granted.

(C) Case name:

    Case number:                    Chapter:

    Date filed:             Date discharged:          Date dismissed:

    Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Nonbankruptcy Action.

    ☐ See attached continuation page for additional facts establishing that this case was filed in bad faith.

f.    ☒ See attached continuation page for other facts justifying relief from stay.

6.  ☐ Actions taken in the Nonbankruptcy Action after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a.  ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b.  ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with the Nonbankruptcy Action enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____

c.  ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 20, 2022 | Shirley S. Cho | /s/ Shirley S. Cho |
|---|---|---|
| *Date* | *Printed name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## MEMORANDUM OF POINTS AND AUTHORITIES

Rocket Ball, Ltd. d/b/a The Houston Rockets, and Clutch City Spots & Entertainment, L.P. (collectively, the "Movants"), as creditors and plaintiffs, hereby submit this Memorandum of Points and Authorities in support of the Motion for Relief from the Automatic Stay (the "Motion"). By the Motion, the Movants request relief from the automatic stay in order to domesticate a pre-petition out-of-state Judgment that they have obtained against the Debtor in California and to name non-debtor affiliates solely to pursue the Judgment against non-debtor affiliates. Prior to executing the Judgment against the non-debtor defendants, Movants further agree to provide the Trustee with fourteen (14) days' prior notice and if the Trustee objects during that time period, they will not proceed without prior agreement of the Trustee or further Court Order.

## BACKGROUND

Movants own and operate the Houston Rockets professional basketball team. Movants and Debtor entered into that *ROK Brands-Houston Rockets Sponsorship Agreement* ("Sponsorship Agreement") dated October 9, 2018 to promote a variety of products and to become the team's official jersey patch sponsor. Under the terms of the Sponsorship Agreement, Debtor was required to pay the Rockets $9,750,000 per season plus other amounts set forth in the Sponsorship Agreement.

The Debtor defaulted under the Sponsorship Agreement by failing to pay the sponsorship fee and other amounts owing as and when due. Following the Debtor's default, the Movants invoked the arbitration clause in the Sponsorship Agreement in May 2020. On October 10, 2020, the Arbitrator issued a final award in favor of the Movants for $11,225,000 plus pre- and post-judgment interest on their claim for breach of contract. The Movants filed an application to confirm the arbitration award in Harris County District Court in Houston, Texas (the "Texas State Court") on October 19, 2020. On December 12, 2020, the Texas State Court confirmed the arbitration award and issued a final judgment in the amount of $11,867,126.11, which included prejudgment interest and attorneys' fees (the "Judgment"). A true and correct copy of the Judgment is attached hereto as **Exhibit 1**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**BASIS FOR RELIF REQUESTED**

Section 362(d)(1) of the Bankruptcy Code provides that the automatic stay shall be lifted for cause after notice and a hearing.  *See* 11 U.S.C. § 362(d)(1).  Section 362(d)(1) provides in relevant part:  "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause . . ." 11 U.S.C. § 362(d)(1).

The term "cause" reflects a flexible standard, taking into account the particular facts and circumstances of the particular issue before the Court.  *See In re Conejo Enters., Inc.*, 96 F.3d 346, 352 (9th Cir. 1996) (noting that "cause has no clear definition and is determined on a case-by-case basis") (internal citations and quotations omitted); *In re Brotman Med. Ctr., Inc.*, 2008 WL 8444797, at *5 (B.A.P. 9th Cir. Aug. 15, 2008) (same); *Delaney-Morin v. Day (In re Delaney-Morin)*, 304 B.R. 365, 369 (B.A.P. 9th Cir. 2003) (citation omitted).  "Exercising discretion in determining cause for stay relief requires the balancing of hardships and consideration of totality of the circumstances." *In re Avila*, 311 B.R. 81, 83-4 (Bankr. N.D. Cal. 2004) (citing *In re Kennedy*, 165 B.R. 488, 490 (Bankr. W.D. Wash. 1994)).

The Movants seek to lift the stay in an abundance of caution solely to domesticate the Judgment in California and amend it to name non-debtor affiliates.  No damage or prejudice will occur to the Estate by allowing the Movants to domesticate/ amend the Judgment.  Through this Motion, Movants do not seek relief to recover any damages, property, claims, or causes of actions that are considered property of the Debtor's estate, such as, for example, fraudulent transfers, preferential transfers, turnover actions, or insurance claims.  Further, prior to executing on any Judgment, Movants agree to provide not less than fourteen (14) days' notice to the Trustee.  To the extent that Movants are successful in receiving satisfaction of the Judgment from non-debtor affiliates, Movants' claims against the estate will be reduced, thereby benefitting this estate and creditors of the estate.

Not lifting the stay to permit the Movants to pursue all avenues for recovery on the Judgment will cause significant hardship to Movants.  The Movants have already spent substantial time,

burden, and costs to pursue and obtain the entry of the Judgment. All that is left is for the Movants to be allowed to execute the Judgment from non-debtor sources.

## **CONCLUSION**

WHEREFORE, the Movants respectfully request that the Court enter an order granting relief from the automatic stay under 11 U.S.C. § 362(d)(1) so that Movants can domesticate the Judgment in California, add additional appropriate non-debtor third-party defendants, and (subject to prior notice on the Trustee and agreement thereon or further Court Order) execute on the Judgment from non-debtor third party defendants.  Movants further request that they be authorized to take all necessary actions to effectuate the foregoing relief and for a waiver of the 14-day stay provided under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure, and any such other and further relief as is just and proper.

Dated:  April 20, 2022

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Shirley S. Cho*
       Shirley S. Cho, Esq.

Co-Counsel for Movants Rocket Ball, Ltd. d/b/a The Houston Rockets, and Clutch City Sports & Entertainment, L.P.

# EXHIBIT 1

10/19/2020 1:28:17 PM
Marilyn Burgess District Clerk
Harris County
Envelope No: 47307632
By: SALGADO, CAROLINA
Filed: 10/19/2020 1:28:17 PM

2020-66997 / Court: 269

CAUSE NO. _____

| | | |
|---|---|---|
| ROCKET BALL, LTD. D/B/A THE HOUSTON ROCKETS, and CLUTCH CITY SPORTS & ENTERTAINMENT, L.P., | § § § § § | IN THE DISTRICT COURT OF |
| *Petitioners*, | § § | HARRIS COUNTY, TEXAS |
| v. | § § | |
| ROKIT MARKETING INC., | § § | _____ JUDICIAL DISTRICT |
| *Respondent.* | § § | |

## ORDER AND FINAL JUDGMENT

On this day, the Court considered Petitioner Rocket Ball, Ltd. d/b/a The Houston Rockets and Clutch City Sports & Entertainment, L.P.'s Application to Confirm Arbitration Award (the "Application to Confirm"). Having considered the Application to Confirm and all other documents on file, the Court is of the opinion that the Application to Confirm should be GRANTED in all respects. It is therefore:

ORDERED that the arbitration award entered on October 10, 2020 in AAA Case No. 01-20-0001-6852, *Rocket Ball, LTD. d/b/a/ the Houston Rockets, and Clutch City Sports & Entertainment, L.P. v.ROKiT Marketing Inc..* (the "Award") is confirmed. The Award is attached hereto as Exhibit A and incorporated herein.

This Order and Final Judgment renders the Award enforceable in the same manner as any other judgment or decree of the Court. This Order resolves all claims in this case and is intended to be a final judgment. No grounds exist for vacatur or modification of the Award.

IT IS FURTHER ORDERED that the Rockets are entitled to recover: (i) $11,225,000.00 for money damages as set out in the award; (ii) $442,544.11 for pre-judgment interest as set out in the award; and (iii) $199,582.00 representing the Rockets' reasonable attorneys' fees, costs, and expenses incurred in this Arbitration as set out in the award representing

a total award of <u>$11,867,126.11.</u>

       IT IS FURTHER ORDERED that the Rockets are entitled to recover post-judgment interest from October 10, 2020 at 5% per year as set out in the award.

       IT IS FURTHER ORDERED that respondent ROKiT Marketing Inc. shall pay all costs associated with this matter. All relief not expressly granted herein is denied.

       DATED this _____ day of _____, 2020.

Signed:
12/10/2020
3:11 PM

JUDGE PRESIDING

# EXHIBIT A

AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| ROCKET BALL, LTD., D/B/A THE HOUSTON ROCKETS, and CLUTCH CITY SPORTS & ENTERTAINMENT, L.P., | §<br>§<br>§<br>§ | |
| Claimants, | §<br>§ | CASE NO. 01-20-0001-6852 |
| v. | §<br>§ | |
| ROKIT MARKETING INC., | §<br>§ | |
| Respondent. | § | |

### FINAL AWARD

Claimants Rocket Ball, Ltd., d/b/a The Houston Rockets, and Clutch City Sports & Entertainment, L.P (hereafter together the "Rockets") filed their demand for arbitration with the American Arbitration Association ("AAA") on March 4, 2020. Claimants demanded $11,225,000.00 for failure to pay amounts allegedly due and owing pursuant to the Sponsorship Agreement (the "Agreement") between Claimants and Respondent ROKiT Marketing, Inc. ("ROKiT").[1] Respondent does not deny the amount it was obligated to, but did not, pay, but demands an offset in the amount of $2,354,268.00. There being no disputed issues of material fact, this final award is entered on Claimants' Motion for Summary Judgment.

### The Parties

Claimant Rocket Ball, Ltd., d/b/a The Houston Rockets, is a Texas limited partnership with its principal place of business in Houston, Texas. Counsel for Claimants are as follows:

BAKER BOTTS L.L.P.
Michael S. Goldberg
State Bar No. 08075800
Cornelius M. Sweers
State Bar No. 24102551

---

[1] References to the Agreement herein are to Exhibit 1 to the witness statement of Rockets General Counsel Rafael Stone. No discrepancies have been identified among the various versions of the Agreement that have been submitted.

One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: (713) 229-1401
Facsimile: (713) 229-2801
michael.goldberg@bakerbotts.com
cory.sweers@bakerbotts.com

Respondent ROKiT Marketing, Inc. is a Delaware corporation, with its principal business

address at 17383 W. Sunset Blvd., Suite A300, Pacific Palisades, California 90272. Respondent

was initially represented by two of its executives, Russell Gillespie and Jonathan Kendrick.

Subsequently, Respondent was represented by

MARTIN, DISIERE, JEFFERSON & WISDOM, LLP
Christopher W. Martin
State Bar No. 13057620
Kyle R. Sears
State Bar No. 17959800
808 Travis, Suite 1100
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101
martin@mdjwlaw.com
sears@mdjwlaw.com

### The Sponsorship Agreement

At its heart, the Sponsorship Agreement established Respondent ROKiT Marketing, Inc.

as "the official jersey patch sponsor for the Houston Rockets" (Kendrick ¶ 2)[2] pursuant to

authorization for such patches issued by the National Basketball Association in 2017 (Sheirr ¶ 8).

The Agreement "included, among other things, the placement of a patch displaying the ROKiT

logo on all official Rockets game jerseys, the placement of the patch on jerseys sold at the Rockets'

home arena, the Toyota Center, advertising signage at Toyota Center, and the use of a suite for all

events at Toyota Center (including Rockets home games)." (Sheirr ¶ 16.)

---

[2] Citations in the form (Witness ¶ ___) refer to the designated paragraphs of the witness statement named.

The "Initial Term" of the Agreement was for the 2018-19 and 2019-20 National Basketball Association ("NBA") seasons and was to expire on June 30, 2020, with an option for additional years unless previously terminated. (Stone Ex. 1, ¶ 1.) In return, Respondent agreed to pay Claimant a

> Base Contract Price in the aggregate amount of Nine Million Seven Hundred Fifty Thousand Dollars ($9,750,000), which amount shall be due and payable as follows: Fifty Percent (50%) within ten (10) business days of the execution of this Agreement and Fifty Percent (50%) on or before January 15, 2019. For each subsequent Contract Year during the Term, the Base Contract Price shall be determined by increasing the Base Contract Price of the immediately preceding Contract Year by Ten Percent (10%), which amount shall be due and payable in full on or before July 1 of the then applicable Contract Year.

(*Id.*, ¶ 3A(i).). In addition, the Agreement provided for an

> Additional Contract Price in the event and to the extent that Team qualifies to play in the NBA post-season during the first Contract Year [2018-19], Sponsor shall pay an Additional Contract Price *on or before July 1 of the following Contract Year*. In the event and to the extent that Team qualifies to play in the NBA post-season during any subsequent Contract Year following the first Contract Year, Sponsor shall pay an Additional Contract Price in the amount(s) specified above within fifteen (15) days of date of invoice from Team.

(*Id.*, ¶ 3A(ii) (emphasis added).) For the 2018-19 NBA season, the Additional Contract Price for qualifying for the second round of the NBA playoffs was $500,000.00, payable on or before July 1 of the following Contract Year, or July 1, 1019. (*Id.*) Certain of the entitlements other than the placement of uniform patches were excluded from coverage under this Additional Contract Price. (*Id.*)

### The Arbitration Agreement and the Governing Law

Paragraph 4 of the Sponsorship Agreement incorporated the General Terms and Conditions attached to the Agreement as Exhibit D. Paragraph 16 of the General Terms and Conditions specified that the Agreement was to be governed by and construed in accordance with the laws of the State of Texas, without regard to principles of conflicts of laws and that disputes were to be

settled by binding confidential arbitration in Houston, Texas in accordance with the Commercial

Arbitration Rules of the American Arbitration Association:

> **16. Governing Law; Arbitration.** This Agreement shall be governed by and
> construed in accordance with the laws of the State of Texas, without regard to
> principles of conflicts of laws. Any controversy or claim arising out of or relating
> to this Agreement or its alleged breach shall be settled by binding confidential
> arbitration in Houston, Texas in accordance with the Commercial Arbitration Rules
> of the American Arbitration Association ('AAA'), and judgment on the award
> rendered by the arbitrator may be entered by any court having jurisdiction thereof.
> The arbitrator shall be selected by mutual agreement of the parties, if possible, and
> shall be a resident of Houston, Texas. If the parties fail to reach agreement upon
> the appointment of an arbitrator within thirty (30) days following receipt by one
> party of the other party's notice of desire to arbitrate, the arbitrator shall be selected
> from a list or lists of persons submitted by the AAA. The selection process shall be
> that which is set forth in the AAA Commercial Arbitration Rules then prevailing.

The Sponsorship Agreement further provided in section H(i) as follows: "Suite. Sponsor shall

receive the right to use Suite #335 in the Arena for every Home Game, concert, and family show

at the Arena during the Term (the 'Suite'), which shall be provided to Sponsor in accordance with

and subject to the terms and conditions of CCSE's standard form of Suite License Agreement (the

'Suite Lease'), which is attached hereto as Exhibit E and incorporated herewith as a part of this

Agreement." The right to use Suite #335 was incorporated in the Sponsorship Agreement with no

additional consideration specified for the Lease.

The lease so incorporated as Exhibit E to the Sponsorship Agreement, titled "Toyota Center

Suite Lease," was signed by Clutch City Sports & Entertainment, L.P., as "Landlord" and ROK

Brands as "Tenant" ("The Lease"). The Lease recited the signing of the Sponsorship Agreement,

which, among other things, gave Respondent as Sponsor "the right to use a suite in the Arena."

The Lease included a further attachment titled "Exhibit A – Standard Terms and

Conditions." Exhibit A to the Lease provided that its terms and conditions were to be "deemed

fully incorporated into this Lease." Like the Terms and Conditions to the Agreement, the Terms

4

and Conditions incorporated in the Lease provided for resolution of disputes under Texas law by arbitration before the AAA.

17. ARBITRATION.

(a) Resolution by Mutual Agreement. If any dispute, controversy or claim between Landlord and Tenant arises under this Lease, or is related in any way to this Lease or the relationship of the parties hereunder (a 'Dispute or Controversy'), including, but not limited to, a Dispute or Controversy relating to the effectiveness, validity, interpretation, implementation, termination, cancellation or enforcement of this Lease, the parties shall first attempt in good faith to settle and resolve such Dispute or Controversy by mutual agreement in accordance with the terms of this Section 17(a). In the event a Dispute or Controversy arises, either party shall have the right to notify the other party that it has elected to implement the procedures set forth in this Section 17(a). Within fifteen (15) days after delivery of any such notice by one party to the other party regarding a Dispute or Controversy, Landlord and Tenant shall meet at a mutually agreed time and place to attempt, with diligence and in good faith, to resolve and settle the Dispute or Controversy. If a mutual resolution and settlement are not obtained at such meeting, or if no such meeting takes place within the fifteen (15)-day period, then either party may by notice to the other party submit the Dispute or Controversy to arbitration in accordance with the provisions of Section 17(b). Upon the receipt of notice of referral to arbitration hereunder, the receiving party shall be compelled to arbitrate the Dispute or Controversy in accordance with the terms of Section 17(b) without regard to the justiciable character or executory nature of such Dispute or Controversy. Each party hereby agrees that any Dispute or Controversy that is not resolved pursuant to the provisions of this Section 17(a) shall be submitted to binding arbitration hereunder and, if submitted, shall be resolved exclusively and finally through such binding arbitration. This Section 17 constitutes a written agreement by the parties to submit to arbitration any Dispute or Controversy arising after the execution of this Lease within the meaning of Section 171.001 of the Texas Civil Practice and Remedies Code.

(b) Binding Arbitration. Binding arbitration shall be conducted in accordance with the procedures set forth in this Section 17(b). The party seeking arbitration hereunder shall request such arbitration in writing, which writing shall be delivered to the opposing party and shall include a clear statement of the matter(s) in dispute. Except to the extent provided in this Section 17(b), the arbitration shall be conducted in Houston, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association by a single arbitrator to be appointed upon the mutual agreement of the parties, within twenty (20) days after the date the written request for arbitration was delivered to the opposing party. In the event the parties are unable to agree on a single arbitrator within the twenty (20)-day period, then either party, on behalf of both parties, may request such appointment by the Administrative Judge of the Harris County (Texas) District Court (the 'Administrative Judge'). In the event of the failure, refusal or

inability of the Administrative Judge to appoint an arbitrator within the next ten (10)-day period, the party seeking arbitration shall make the parties' request for appointment of an arbitrator and furnish a copy of the aforesaid description of the Dispute or Controversy and response (if any) to the American Arbitration Association in Houston, Texas (the 'Houston AAA'). Each party may, but shall not be required to, submit to the Houston AAA a list of up to three (3) qualified individuals as candidates for appointment as the arbitrator. The arbitrator appointed by the Houston AAA need not be from such lists. All arbitrators shall be unaffiliated with the parties (and each of their respective affiliates and their respective officers, directors, employees and agents), and shall be residents of Houston, Texas. No arbitrator shall be employed by either party, or have any material financial dependence upon a party, nor shall any arbitrator have any financial interest in the Dispute or Controversy. Nothing contained herein shall be deemed to give the arbitrator appointed hereunder any authority, power or right to alter, change, amend, modify, waive, add to or delete from any of the provisions of this Lease. *The costs and expenses of the arbitrator shall be shared equally by the parties*, and the additional incidental costs of arbitration shall be paid for by the non-prevailing party in the arbitration; provided, however, that where the final decision of the arbitrator is not clearly in favor of a party, such incidental costs shall be shared equally by the parties.

(Lease, Stone Ex. 1, Exh. A, section 17(b) at p. A-10.). (Related provisions were contained in section 23 of the Standard Terms and Conditions of the Lease:

(b) **Attorneys' Fees.** If Landlord or Tenant defaults in the performance of any of the terms, covenants, agreements or conditions contained in this Lease and the non-defaulting party places the enforcement of this Lease, or any part thereof (including the collection of any Rental due, or to become due, hereunder or recovery of the occupancy of the Suite) in the hands of an attorney, or files a claim upon the same, the non-prevailing party, to the extent permitted by applicable law, shall pay to the prevailing party all reasonable attorneys' fees incurred by the prevailing party.

(c) **Applicable Law.** This Lease shall be interpreted according to the laws and decisions of the State of Texas applicable to agreements made and to be performed therein, without regard to conflict of laws principles. Subject to Section 17 and in no way limiting Section 17, the parties agree that the federal and state courts in the State of Texas shall have personal jurisdiction over the parties with respect to, and that each party shall not assert any objection it may have to venue being proper in such courts with respect to, and that such courts shall be the exclusive forum for, the resolution of any matter or controversy arising from or with respect to this Lease. In any action or proceeding commenced in any federal court in the State of Texas for the purpose of enforcing any arbitration decision, this Lease or any right granted herein arising heretofore, or any order or decree predicated thereon, any summons, order to show cause, writ, judgment, decree or other process, issued by such court, may be delivered to Tenant personally outside

the State of Texas, and when so delivered Tenant shall be subject to the jurisdiction of such court as though the same had been served within the State of Texas. The parties acknowledge that any judgment obtained hereunder may be enforced by any court in any other jurisdiction.

### The Dispute

The Agreement was signed on October 9, 2018 (Sheirr ¶ 15), with the result that 50% of the Base Contract Price of $9,750,000.00 was due within ten business days thereafter and the remaining 50% was due on or before January 15, 2019. It is not disputed that the Base Contract Price for the 2018-19 season was paid and that Claimants provided all of the sponsorship rights due under the contract for the 2018-19 NBA season, including "the contractually required advertising and promotions, the jersey patch, and use of the suite for all events." (Sheirr ¶ 18.)

The Rockets qualified for the second round of the NBA playoffs for the 2018-19 season. Under the Agreement, ROKiT was required to pay the Additional Contract Price of $500,000.00 on or before July 1 of the following Contract Year (July 1, 2019) (Agreement, Stone Ex. 1, ¶ 3(A)(ii)) or within fifteen days of being invoiced by the Rockets. (*Id.*, ¶ 19.)

The Rockets sent ROKiT an invoice for $500,000.00 on May 29, 2019. (*Id.*, ¶ 20 & Ex.1.) It is undisputed that ROKiT did not pay the invoice within 15 days of its receipt and has never paid this invoice. (Sheirr ¶ 24 & Ex.1.)

Under the terms of the Agreement, ROKiT was obligated to pay the Base Contract Price in respect of the 2019-20 NBA season in the amount of $10,725,000.00 by July 1, 2019.[3] It is undisputed that this amount was never paid. (*Id.*, ¶¶ 23-28.)

By letter dated January 17, 2020, Rafael Stone, general counsel of the Rockets "demanded that ROKiT "make payment of the total amount due under the Sponsorship Agreement in the

---

[3] The Base Contract Price for years after the Initial Contract Year was determined by increasing the Base Contract Price of the immediately preceding Contract Year ($9,750,000.00 for the 20192019 year) by Ten Percent (10%), payable in full on or before July 1 of the then applicable Contract Year. (Agreement, Stone Ex. 1, ¶ 3A(i).)

7

amount of $11,225,000.00"; on behalf of the Rockets, Stone further advised that "failure by ROKiT to make payment would be deemed a default and breach of the Sponsorship Agreement." (Stone ¶ 23 & Ex. 3 at Rockets_000091-92.)  Stone further advised Respondent of the Rockets' intent to arbitrate." (Stone ¶ 24 & Ex. 4.)  After the Rockets' invoices were sent to Respondent in May 2019, the Rockets repeatedly communicated with Respondent seeking payment of the Base Contract Price for the 2019-20 season and the Additional Contract Price for the 2018-19 season. In response, Respondent's representatives, including CEO Kendrick, acknowledged the demands and promised to pay.  (Sheirr ¶¶ 24-26 & Exs. 2, 3.)  No payment was received.

On or about March 12, 2020, the NBA cancelled the remainder of the 2019-20 season, including 9 of the Rockets' home games and 9 away games, because of the corona virus pandemic. (Kendrick ¶ 4.)  Mr. Kendrick's witness statement does not deny that the amounts above were not paid, but asserts a right to an offset for the 2019-20 season as a result of the cancellation of those games on the grounds that ROKiT "did not receive the full consideration and benefit from the Agreement." (*Id.* ¶ 5.)

### Proceedings

The AAA determined that the arbitration was to be administered under the Large Complex Case Procedures of the Commercial Arbitration Rules as amended and in effect October 1, 2013. Letter, Ingeuneal Gray, Esq. (AAA) to William H. Knull, III, Rocket Ball, Ltd. d/b/a The Houston Rockets, Clutch City Sports & Entertainment, LP, and ROKit Marketing, Inc., May 18, 2020.)

The Parties having failed to agree on the appointment of an arbitrator, the AAA notified the Parties of the appointment of the undersigned as sole arbitrator on May 29, 2020. A preliminary conference call was held on June 10, 2020.  Claimants were represented by Messrs. Goldberg and Sweers.  Respondent was represented by Mr. Gillespie.  At the outset of the conference, the Parties agreed that they had no objections to arbitral jurisdiction, to hearing before a single arbitrator, to

the arbitrator appointed by the AAA or to the site of the arbitration in Houston, Texas. The Parties further confirmed that there were no unsatisfied preconditions to the arbitration proceeding. The arbitration agreement provides that the hearing is to be held in Houston, Texas. The agreement further specifies that it is to be governed by and construed in accordance with laws of the State of Texas, without regard to principles of conflict of laws.

On June 10, 2020, the tribunal held a preliminary conference call. Claimants were represented by Michael S. Goldberg and Cory Sweers of Baker Botts L.L.P. Respondent was represented by Russell Gillespie of ROKit Marketing Inc. Ingeuneai Gray attended on behalf of the AAA. In the course of the conference call, the Parties agreed that they had no objections to arbitral jurisdiction, to hearing before a single arbitrator, to the arbitrator appointed by the AAA or to the site of the arbitration in Houston, Texas. The parties further confirmed that there are no unsatisfied preconditions to the arbitration proceeding.

On June 4, 2020, six days before the initial preliminary conference, Respondent had filed eight counterclaims. Claims 1 through 4 alleged losses resulting from the reaction of the government of China to certain comments allegedly made by the general manager of the Rockets with respect to affairs in Hong Kong; Claim 5 demanded compensatory and punitive damages as a result of "Loss of Rights ... as a Result of Games Not Being Played at the Toyota Center"; Claim 6 sought damages for alleged breach of confidentiality obligations; Claim 7 sought damages for breach of alleged non-disparagement obligations; Claim 8 sought damages for alleged loss of business with Landry's. In total, Respondent claimed damages of no less than $95,000,000.00 and further claimed pre- and post-judgment interest, punitive damages with respect to certain of its counterclaims together with attorneys' fees and the dismissal of Claimants' claims.

By June 12, 2020, following an exchange of emails on hearing dates acceptable to both Parties, the Parties agreed that the final evidentiary hearing would take place over four days commencing October 6, 2020 and further agreed that the matter could be ready for hearing by that date despite the relatively short time remaining for pre-hearing procedures notwithstanding the scope of Respondent's counterclaims.

The results of the initial conference were duly recorded in Procedural Order No. 1, dated June 12, 2020. Respondent filed an Answering Statement on June 25, 2020, generally denying Claimant's allegations, asserting thirty-one affirmative defenses and asking that Claimant take nothing as a result of its claims.

Following the entry of Procedural Order No. 1, the Parties negotiated a more detailed scheduling order, which was forwarded to the arbitrator by email dated June 19, 2020 with the representation that the Parties had conferred and agreed on all aspects of the draft. Mr. Gillespie then confirmed that Respondent was in agreement that there were no remaining issues necessitating a further telephone conference. In response to the agreed draft, on June 22, 2020, the arbitrator posed several questions, including whether the draft schedule allowed sufficient time in particular for the substantial pre-hearing information exchange provided for in the draft. The arbitrator requested certain additions on procedural details. Mr. Gillespie subsequently acknowledged that counsel for Claimant had attempted to contact him to discuss the arbitrator's response but advised that he had been unable to respond as a result of a family medical emergency. The scheduled conference to discuss the procedural order was accordingly postponed to allow the Parties to confer.

By email dated July 8, counsel for Claimant advised that Respondent had still not responded to the proposed draft and included the previously exchanged draft proposal in both its

10

original form and blacklined to show the changes inserted in response to the arbitrator's questions. To the extent that deadlines were changed, they were modestly extended; the original hearing date remained as previously agreed. By email the same day, the arbitrator requested that Respondent advise as to its position on the proposed revisions by the close of the following day. When no response was received, the previously scheduled telephone conference was convened at 9 am CDT on Friday, July 10. Claimant was represented on the call by Messrs. Goldberg and Sweers; no one appeared on behalf of Respondent. On that same day, Mr. Gillespie advised that Respondent had retained counsel to represent it in the arbitration.

On July 10, 2020, the undersigned issued Procedural Order No. 2, which by its terms incorporated the draft scheduling order previously reported as having been agreed by the Parties, but somewhat modified to respond to the arbitrator's requests of June 22. The form of direct witness testimony was changed to written submissions in light of the short schedule and to reduce the scope of otherwise necessary pre-hearing proceedings.

By email dated July 30, 2020, counsel for Claimant advised that agreement had been reached with newly appointed counsel for Respondent to revise certain dates adopted in Procedural Order No. 2, with no change to the hearing date. The revised dates were included in a draft Procedural Order No. 3, which otherwise incorporated the remaining terms of Procedural Order No. 2. On August 3, counsel for Respondent filed the agreed Procedural Order No. 3, signed by counsel for both Parties. The undersigned signed and filed the Agreed Order the same day.

On August 10, 2020, Respondent filed notice of its withdrawal of its counterclaims numbered 1, 2, 3, 4, 6, 7 and 8 as follows:

1. Respondent hereby withdraws Claims 1, 2, 3, 4, 6, 7 and 8 as asserted in Respondent ROKiT Marketing Inc's Counterclaim.

2. Respondent does not withdraw and is retaining Claim 5 as asserted in Respondent ROKiT Marketing Inc's Counterclaim.

11

> 3. In connection with Claim 5, Respondent retains its claim for damages, attorneys
> fees, interest, costs, expenses and such other relief to which it may be entitled as
> asserted in Respondent ROKiT Marketing Inc's Counterclaim.

By letter dated August 12, 2020, counsel for Claimants reported that

> Less than an hour after filing the notice of withdrawal, ROKiT's counsel notified
> us of ROKiT's intent to re-file in state court its counterclaim relating to purported
> representations regarding alcohol sales to Landry's Restaurants, though with an
> affiliate of ROKiT as the proposed plaintiff.

The letter stated that "the Rockets do not take issue with the fact that ROKiT has withdrawn its counterclaims from this arbitration," but that the Rockets explicitly rejected "any suggestion that the withdrawal of counterclaims is without prejudice."[4] Claimants further noted a disagreement with respect to the sufficiency of Respondent's response to a discovery request relating to the calculation of damages on the remaining counterclaim and requested a conference call to address that matter.[5]

Pursuant to the schedule incorporated in Procedural Order No. 3, Claimant submitted written witness statements on August 24, 2020, as follows:

1. Thaddeus "Tad" Brown, Chief Executive Officer of the Rockets;

2. Gretchen Sheirr, Chief Revenue Officer of the Rockets; and

3. Rafael Stone, General Counsel of the Rockets.

On August 25, 2020, Respondent filed the witness statement of Jonathan Kendrick, CEO of ROKiT Marketing, Inc.

---

[4] AAA Rule R-6(a) provides in pertinent part:

> A party may at any time prior to the close of the hearing or by the date established by the arbitrator
> increase or decrease the amount of its claim or counterclaim.

No arbitral ruling on the merits of Respondent's Counterclaims other than Claim 5 or on the preclusive effect, if any, of Respondent's withdrawal of its other counterclaims on subsequent proceedings was requested or issued.

[5] When Counsel for Respondent answered that Respondent intended to supplement the contested discovery response, making a call unnecessary, the call was postponed pending the filing of the supplementary response. By email dated August 13, 2020, Counsel advised that there was no need for a call on the discovery issue.

As agreed in Procedural Order No. 2, these statements contain the entire direct examination of these witnesses.

On August 31, 2020, Claimants filed their Motion for Summary Judgment. No rebuttal witness statements were filed by either party by August 31, 2020, as required by Procedural Order No. 3.

On September 11, 2020, the Parties advised that they saw no need for the conference call tentatively scheduled in Procedural Order No. 2 for September 16, 2020, which was therefore cancelled. The Parties subsequently agreed that a brief conference call would be useful, which was convened on September 16, 2020, in which Claimants were again represented by Messrs. Goldberg and Sweers and Respondent by Mr. Sears.

During the September 16 call, counsel agreed that (1) there were no further witnesses to be called; (2) there was no need to cross-examine the witnesses whose written statements had been submitted; (3) all relevant documents had been submitted; (4) there was no dispute as to the amounts due from Respondent or the dates on which those amounts were due; and therefore (5) the only issues remaining are whether Respondent is entitled to an offset against those unpaid amounts under the terms of the contract and governing Texas law and, if so, in what amount, and whether either Party is entitled to recover its attorneys' fees.

It was further agreed that Claimant would submit its claim for attorneys' fees on September 17 and that counsel would seek to agree on the form of the applications for fees.

It was further agreed that a (brief) reasoned award would be required as previously agreed and that the award would be filed not later than 45 days following the attorneys' fees submissions due to be filed on September 17. By exchange of emails dated September 30 and October 1, 2020,

the Parties agreed that no hearing was necessary. The October 6 hearing was accordingly cancelled and the record declared closed on October 1, 2020.

### The Motion for Summary Judgment

Claimants contend that they are entitled to judgment in the full amount of the unpaid Base Contract Price for the 2019-20 NBA season and the Additional Contract Price for qualifying for the second round of the NBA playoffs in the 2018-19 NBA season (in sum $11,225,000.00), without any offset against the amounts due. Respondent, on the other hand, contends in its Tenth Affirmative Defense ("Offset"):

> 10. In the event it is determined that Respondent is liable to Claimants in any amount or manner, which Respondent denies, Respondent is entitled to have Respondent's liability diminished and offset by and [sic] all amounts of money that Claimants owe to Respondents and by all costs, expenses and loss and related items incurred by Respondent and paid by Respondent to Claimants and/or any other third party.

Similarly, Respondent alleged in its fifth counterclaim (Claim 5) that it is entitled to compensatory and punitive damages as a result of "Loss of Rights under the Sponsorship Agreement as a Result of Games Not Being Played at the Toyota Center." Respondent contends that "Claimants did not provide, and Respondent did not receive, the full rights, benefits and value of and full performance and consideration pursuant to the Agreement." (Response of ROKiT Marketing, Inc. to Claimants' Motion for Summary Judgment ("Response"), ¶ 1.) Respondent's Kendrick computed the offset it claimed at $2,354,268.00. (Kendrick ¶ 6.)

Under Texas Law, "the purpose of the summary judgment rule is to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and there is no genuine issue of fact. *Gaines v. Hamman*, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962)." The Supreme Court of Texas established the following standards:

> 1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Valero Marketing & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Gaines v. Hamman*, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962). *See also Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

The AAA Commercial Rules provide as follows:

R-33. The arbitrator may allow the filing of and make rulings upon a dispositive motion only if the arbitrator determines that the moving party has shown that the motion is likely to succeed and dispose of or narrow the issues in the case.

Here, the Parties are agreed that they have no need to cross-examine the witnesses who have submitted written statements, that there are no additional witnesses to be heard and that there is no need for a final hearing. The Parties have further agreed on the amounts of the Base Contract Price and the Additional Contract Price under the Sponsorship Agreement, which are in any event clear on the face of the Sponsorship Agreement, and that those amounts have not been paid. It is therefore apparent that, while the Parties disagree vigorously about the conclusions to be drawn from the undisputed facts, there is no dispute as to the facts themselves. The only issue remaining to be decided is whether Respondent is entitled to an offset against the payments otherwise due, together with entitlement to interest and attorneys' fees. As a result, I find that the motion for summary judgment is both likely to succeed and to fully resolve the issues, thus avoiding the time and expense of a hearing.

## The Claim

Claimants contend that the failure to pay the Base Contract Price for the 2019-20 NBA season and the Additional Contract Price as a result of the Rockets' qualifying for the second round of the 2018-19 NBA playoffs constituted material breaches of the Sponsorship Agreement and

demand payment of the full $11,225,000.00. As the moving party, Claimants have the burden of proving the absence of a genuine issue of fact material to their right to this recovery.

Respondent does not dispute that it owed but did not pay the Base Contract Price for the 2019-20 season or the Additional Contract Price for the 2018-19 season or that its non-payment constituted material breaches of the Sponsorship Agreement. Because the facts as to the amounts due, offset aside, and Respondent's non-payment, are not disputed, I find, based on the terms of the Sponsorship Agreement, the testimony of the witnesses and the documentary evidence submitted, that Claimants have established that they are entitled to an award in the amount of $11,225,000.00, all of which was due and payable but not paid by Respondent, subject only to resolution of Respondent's Tenth Affirmative Defense (Offset) and fifth Counterclaim (Claim 5).

### Offset

Respondent does not cite to any provision in the Sponsorship Agreement or any alternative agreement entitling Respondent to the offset it claims. Nevertheless, Respondent contends that it is entitled to an offset in the amount of $2,354,268.00 "because Claimants did not provide, and Respondent did not receive, the full rights, benefits and value of and full performance and consideration pursuant to the Agreement"[6] as a result of the cancellation of the remainder of the 2019-20 season by the NBA on March 12, 2020. Mr. Kendrick explained the computation of the amount claimed as follows:

> At a minimum, ROKiT Marketing, Inc. is entitled to an offset in the amount of $2,354,268 against the amount sought to be recovered by Claimants. This minimum amount is calculated by dividing the sponsorship fee for 2019-20 of $10,725,000 by *41 scheduled home games* and multiplying by 9 home games that were cancelled.

(Kendrick ¶ 6) (emphasis added).

---

[6] Response of ROKiT Marketing, Inc. to Claimants' Motion for Summary Judgment ("Response to MSJ") at 1.

Respondent contends that Claimants did not terminate the Agreement or suspend performance as a result of the breaches. (Response at ¶¶ 3-7.) Instead, Respondent argues, Claimants continued to perform the Agreement even after the remainder of the 2019-20 NBA season was cancelled on March 11, 2020. (*Id.*, ¶¶ 8-10.) Respondent further contends that it received no further benefit from the Agreement after that cancellation. (*Id.*, ¶ 13.) In addition, Respondent concedes, home games could not be re-scheduled, and Claimants could not provide Alternative Rights pursuant to paragraph 17 of the Agreement's Terms and Conditions because of the cancellation of the remainder of the schedule. (*Id.*, ¶¶ 16-17.)

Although Respondent has the burden of establishing its affirmative defense of a right to offset as well as its counterclaim on the same ground, the same undisputed facts that establish Claimants' right to recovery are relevant to and dispositive of Respondent's contentions as well.

As summarized above, Claimant's Motion for Summary Judgment established that the cancellation of the remainder of the 2019-20 season on March 12, 2020 occurred long after ROKiT's payments for that season as well as the Additional Contract Price for the 2018-19 season had become due and unpaid, and therefore Respondent had long been in material breach.

Moreover, the Agreement provided no remedy for the cancellation of games, other than an obligation to "negotiate in good faith to agree on alternative rights or benefits of equal value to be provided by Team to Sponsor ('Alternative Rights')."

> 17. **Unavailability**. The parties agree that in the event that for any reason one or more scheduled regular-season games, which cannot be rescheduled during the NBA season in which such game was to be played, is not played at the Arena, the parties shall negotiate in good faith to agree on alternative rights or benefits of equal value to be provided by Team to Sponsor ('Alternative Rights'). If the parties fail to agree Alternative Rights within fourteen (14) days after the initial communication by either party to the other for the purposes of initiating said negotiations, then the parties shall pursue resolution through arbitration under the Commercial Arbitration Rules of the American Arbitration Association (the

17

'Arbitration Rules') by a single arbitrator appointed in accordance with the
Arbitration Rules.

(Stone Ex. 1, Agreement Ex. D (Terms & Conditions, ¶ 17.)  Claimants further note that the

Agreement expressly disclaimed any guarantee of the number of games to be played.

> 7. **No Guarantee**. The parties understand and agree that nothing in this Agreement
> shall be deemed a guarantee or other commitment by Team of any minimum
> number of Rockets games and/or Arena events and/or any minimum attendance
> numbers; provided that if a specific number is expressly set forth above, then, in
> that case, such specified number shall relate only to the particular sponsorship
> element described in the same provision.

(*Id.* ¶ 7).

Thus, Respondent's Tenth Affirmative Defense and Counterclaim 5 fail for a series of

reasons.  First, and dispositively, these contentions are barred by the doctrine of material breach:

because of Respondent's prior material breach, Claimants were under no continuing duty to

perform. *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004)

("... we hold that as a matter of law Driver committed a material breach. Mustang was thereafter

discharged from its duties under the contract").

Respondent's contentions are also precluded by the Agreement.  Paragraph 6(a) of the

Terms and Conditions to the Agreement provided that "[i]t shall be an event of default hereunder

"if Sponsor [Respondent] shall fail to pay any sums when due pursuant to this Agreement within

seven (7) days of receipt of written notice from Team that the sum is late ('Late Payment')."  It is

undisputed that Respondent failed to pay the sums due despite repeated notices from Claimants

(Sheirr, *passim* & Exs. 1-3).  Paragraph 6(b) of the Agreement's Terms and Conditions further

provided that it would be an event of default "if a party shall materially breach this Agreement if

such breach is not cured within thirty (30) days of the receipt of notice thereof" (subject to

extension in the case of a non-monetary breach not subject to cure within 30 days).  Section 6(c)

of the Terms and Conditions further provided that in the event of a default "Sponsor [Respondent]

18

shall be responsible for the entire unpaid portion of the Base Contract Price and Additional Contract Price (if applicable) less any payments made or to be made by any alternative sponsor procured by Team."

In addition, the very grounds stated by Respondent for its Tenth Affirmative Defense and counterclaim, namely the "Loss of Rights under the Sponsorship Agreement *as a Result of Games Not Being Played at the Toyota Center*" (Counterclaim 5)(emphasis added) and Mr. Kendrick's calculation of the amount he claims explicitly assume that ROKiT was entitled to a certain minimum number (41) of Rockets home games. But that assumption is expressly barred by paragraph 7 of the Terms and Conditions, which provided that "nothing in this Agreement shall be deemed a guarantee or other commitment by Team of any minimum number of Rockets games."

Moreover, the only remedy provided by the Terms and Conditions of the Agreement in the case of "unavailability" of games "which cannot be rescheduled during the NBA season in which such game was to be played, was to ... negotiate in good faith to agree on alternative rights or benefits of equal value to be provided by Team to Sponsor ("Alternative Rights"). (Agreement Ex. D § 17.) As Respondent concedes, it was not possible to agree to alternative sponsorship rights of equal value because of the cancellation of the remainder of the 2019-20 NBA season (Response at ¶¶ 17-18), and the Agreement expired by its terms as of June 30, 2020 (Agreement ¶ 1).

For all of the foregoing reasons, I find, based on the testimony of the witnesses, the documents in evidence, and the terms of the Sponsorship Agreement that there is no genuine issue of material fact as to Respondent's Tenth Affirmative Defense or its Counterclaim/Claim 5 demanding an offset, both of which are accordingly denied.

Although Respondent's original Counterclaim 5 included a claim for punitive damages, that claim was not pursued in its opposition to Claimants' Motion for Summary Judgment. Since

punitive damages are not in any event recoverable on a claim for breach of contract, that claim is deemed abandoned and, in any event, denied.

Similarly, Respondent's Affirmative Defenses, other than offset, were not supported by evidence as discussed above or addressed in response to Claimants' Motion for Summary Judgment and were thus abandoned and otherwise denied for the reasons and based on the evidence discussed above. As noted above, Respondent's counterclaims other than Claim 5 (Offset) were withdrawn and are not resolved or otherwise addressed in this Award.

### Interest

Claimants seek an award of interest as allowed under Texas law. Texas law provides for the recovery of pre- and post-judgment interest at the rate of 5% per year when, as now, the prime rate of interest is less than 5%. TEX. FIN. CODE ANN. § 304.003(c). By statute, all such interest is to be compounded annually. (*Id.*, § 304.006.).

The start date for the computation of interest was not addressed by either Party. The Sponsorship Agreement specified that the Base Contract Price was payable in full on or before July 1 of the "then-applicable Contract Year." (Agreement ¶ 3(A)(i).) For the 2019-20 NBA season, the Base Contract Price was therefore due July 1, 2019. The Additional Contract Price payable because the Rockets qualified for the second round of the 2018-19 playoffs was due on or before July 1 of the following Contract Year, July 1, 2019, or within 15 days of the date Claimants sent an invoice. (*Id.* ¶ 3(A)(ii).). Claimants sent invoices for both Contract Prices on May 29, 2019, noting that payment was due in 15 days. (Sheirr Ex. 1.) Claimants repeatedly demanded payment of the amounts due after submission of the invoices. (*Id.*) For reasons they do not explain, Claimants calculate the interest due beginning December 10, 2019 for the Additional Contract Price for the 2018-19 season and December 28, 2019 for the Base Contract Price for the

2019-20 season.  Since both dates are six months or more after the due dates specified in the

Agreement, I adopt the dates employed by Claimants as more favorable, and more than fair, to

Respondent.

Accordingly, Claimants are entitled to recover interest as follows:

a.  Pre-judgment interest on $500,000 at 5% per year ($68.49 per day) beginning
    December 10, 2019 and post-judgment interest on the unpaid principal amount
    from the date of the award until payment in full at 5% per year, compounded
    annually.

b.  Pre-judgment interest on $10,725,000 at 5% per year ($1,469.18 per day)
    beginning December 28, 2019 and post-judgment interest on the unpaid
    principal amount from the date of the award until payment in full at 5% per
    year, compounded annually.

For all of the foregoing reasons, I conclude that Claimants are entitled to an award in

principal amount of $11,225,000, without offset, plus pre- and post-judgment interest on the

outstanding balance at the rate of 5%, compounded annually, as set forth above and as provided

under Texas law.

### Attorneys' Fees

AAA Rule R-47(d) provides that an arbitral award may include an award of attorneys' fees

if all parties have requested such an award or it is authorized by law or the arbitration agreement.

In this case, both Parties have sought an award of fees in their pleadings and in submissions related

to fees.  Section 17(b) of the Lease Standard Terms and Conditions[7] provided:

(b) Binding Arbitration.  … The costs and expenses of the arbitrator shall
be shared equally by the parties, and the additional incidental costs of arbitration
shall be paid for by the non-prevailing party in the arbitration; provided, however,
that where the final decision of the arbitrator is not clearly in favor of a party, such
incidental costs shall be shared equally by the parties.

Related provisions were contained in section 23 of the Lease Standard Terms and Conditions:

---

[7] As noted above, the Lease, which itself incorporated its Standard Terms and Conditions, was incorporated into the
Sponsorship Agreement.

(b) **Attorneys' Fees**. If Landlord or Tenant defaults in the performance of any of the terms, covenants, agreements or conditions contained in this Lease and the non-defaulting party places the enforcement of this Lease, or any part thereof (including the collection of any Rental due, or to become due, hereunder or recovery of the occupancy of the Suite) in the hands of an attorney, or files a claim upon the same, the non-prevailing party, to the extent permitted by applicable law, shall pay to the prevailing party all reasonable attorneys' fees incurred by the prevailing party.

Finally, section 38.001 of the Texas Business & Commerce Code provides for recovery of reasonable attorneys' fees in a suit based on an oral or written contract. TEX. BUS. & COMM. CODE § 38.001. An award of fees to the prevailing party is therefore warranted if not compelled in this case.

For the reasons stated above, Claimants have succeeded in proving their right to recover the full amount they claimed, while Respondent has failed to establish its right to the offset it claimed either as an affirmative defense or as a counterclaim. Claimants are therefore the prevailing parties and entitled to recover their reasonable attorneys' fees. In accordance with Section 17(b) of the Lease Terms & Conditions, the arbitrator's fee shall be shared equally between the Parties in an amount determined by the AAA pursuant to its Rules. Respondent shall pay the administrative fees of the AAA.

Both parties submitted claims for attorneys' fees, and both agreed that the form of the other's submission was sufficient. Neither disputed the amount of the other's fees. Claimants sought an award of $199,582.39.

## FINAL AWARD

Having considered the testimonial and documentary evidence in this case, the terms of the Sponsorship Agreement, and the submissions and arguments of the Parties, and for the reasons given in this Award, the undersigned ORDERS AND AWARDS as follows:

a. Orders that Respondent pay to Claimants damages in the amount of $11,225,000.00; and

b. Orders that Respondent pay to Claimants Pre-judgment interest on the $500,000.00 Additional Contract Price for the Rockets' qualifying for the second round of the 2018-19 NBA playoffs at the rate of 5% per year ($68.49 per day) beginning December 10, 2019 and post-judgment interest on the outstanding balance at the rate of 5% per year from the date of the award until payment in full, interest to be compounded annually; and

c. Orders that Respondent pay to Claimants Pre-judgment interest on the $10,725,000.00 Base Contract Price for the 2019-20 NBA season at 5% per year ($1,469.18 per day) beginning December 28, 2019 and post-judgment interest on the outstanding balance at the rate of 5% per year from the date of the award until payment in full, interest to be compounded annually; and

d. Orders that Respondent pay to Claimants their attorneys' fees in the amount of $199,582.00; and

e. Orders that the Parties each pay half of the arbitrator's fee of $19,875.00 as determined by the AAA in accordance with its Rules; and

f. Orders that Respondent pay the administrative expenses fixed by the AAA in the amount of $21,122.50; and

g. Denies Respondent's counterclaim and affirmative defenses; and

h. Further orders that all relief not specifically granted herein is denied.

Signed at Houston, Texas, USA.

Signed on October 10, 2020.

William H. Knull, III
Arbitrator

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10100 Santa Monica Boulevard, Suite 1300, Los Angeles, CA  90067

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (ACTION IN NONBANKRUPTCY FORUM) with supporting declarations** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *(date)* **April 20, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On *(date)* **April 20, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *(date)* _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
U.S. Bankruptcy Court, Central District of CA
Attn:  Honorable Sandra R. Klein
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA  90012

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 20, 2022 | Nancy H. Brown | /s/ Nancy H. Brown |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*
DOCS_LA:343273.2 75207/001                    Page 9                    **F 4001-1.RFS.NONBK.MOTION**

**CASE NO.: 22-bk-11344-SK**

**1.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Shirley Cho**    scho@pszjlaw.com
- **Peter J Mastan (TR)**    pmastan@iq7technology.com;travis.terry@dinsmore.com;ecf.alert+Mastan@titlexi.com
- **Alexander M Merino**    amerino@mylawllp.com
- **David L. Neale**    dln@lnbyg.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

**2.** **SERVED BY UNITED STATES MAIL**:

Chapter 7 Trustee
Peter Mastan, Esq.
Dinsmore & Shohl LLP
550 S. Hope Street, Suite 1765
Los Angeles, CA 90071

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014    Page 10    **F 4001-1.RFS.NONBK.MOTION**
DOCS_LA:343273.2 75207/001